SYSTEMS PLUS, INC., Plaintiff,

v.

The UNITED STATES, Defendant,

and

Netstar–1, Inc., Intervenor.

No. 05–1076C.

United States Court of Federal Claims.

Oct. 27, 2005.

Thomas C. Papson, Washington, D.C., for plaintiff. David Kasanow, Stephen M. Lastelic, of counsel.

Jerome Madden, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, for defendant. Dennis Adelson, Office of the Solicitor, Department of Labor, of counsel.

William F. Savarino, Washington, D.C., for intervenor. John J. O'Brien, of counsel.

## OPINION

BRUGGINK, Judge.

This is a post-award bid protest involving the award of a Department of Labor contract for network infrastructure and operations support services. Award was made to Netstar–1, Inc. Plaintiff, Systems Plus, Inc., asks the court to order the agency to impose a statutory stay of Netstar's performance while Systems Plus pursues its award protest, currently pending in the Government Accountability Office. Netstar–1 was permitted to intervene. The parties have filed cross-motions pursuant to RCFC 56.1. The matter has been fully briefed and oral argument was heard October 26, 2005. For reasons set out below, we deny plaintiff's request for injunctive relief.

## BACKGROUND [1]

Both Netstar–1 and Systems Plus were contractors with existing General Service Administration ("GSA") Federal Supply Schedule ("FSS") contracts. The Department of Labor ("DOL"), in an April 20, 2005, Request For Quote ("RFQ"), invited holders of GSA FSS contracts to participate in a competition for a Blanket Purchase Agreement ("BPA") to provide services for the DOL's Office of the Assistant Secretary of Administration

1. The facts are drawn from the Statement of Facts of Plaintiff, with exhibits, which the parties have agreed to treat as the administrative record.

and Management, Information Technology Center. Systems Plus was the incumbent contractor for most of the requirements for this particular project.

Prospective offerors were to submit their quotes by May 23, 2005. The BPA was to be awarded under Federal Acquisition Regulation System ("FAR")[2] subpart 8.4 on a "best value" basis. Quotes were to contain a technical proposal, a pricing/business proposal and information about the offeror's past performance. The RFQ was accompanied by a solicitation on Standard Form 1449, for the acquisition of commercial items under FAR subpart 12.3. On May 12, 2005, DOL amended the solicitation to include responses to questions and clarifications. Several responses iterated that the procurement would be conducted using FAR Part 12.

In response to the solicitation, both Netstar–1 and Systems Plus submitted quotes. On September 7, 2005, the contracting officer notified Systems Plus that DOL had made the award to Netstar–1, as it had offered the best value. On September 9, 2005, Systems Plus requested a post-award debriefing, including the basis for the decision and the amount of the award. On September 16, the agency provided Systems Plus what it termed a "brief explanation" concerning the award decision. The first paragraph of this explanation asserted that DOL was not required to provide a debriefing "because this award was completed under the terms of FAR 8.405–2." Administrative Record, Exhibit G. The explanation revealed that Systems Plus had offered a lower price than had Netstar–1 and that its past performance was rated as "satisfactory." *Id.* The explanation also criticized various aspects of Systems Plus's quote.

Based on the information contained in this explanation, Systems Plus filed an award protest in the Government Accountability Office ("GAO") on September 19, 2005. The grounds for this protest were that Netstar–1 had a conflict of interest and an unfair competitive advantage, in violation of FAR subpart 9.5, because of previous performance on a DOL subcontract, and that Netstar–1 was not a responsible contractor, as it had allegedly broken small business rules. On September 20, 2005, the GAO gave formal notice to DOL of the GAO protest. Systems Plus requested that DOL suspend Netstar–1's performance, based upon its reading of 31 U.S.C. § 3553(d)(3)(A), (d)(4) (2000), as requiring a suspension whenever a debriefing was requested and required. On September 30, 2005, the contracting officer notified Systems Plus that it would not suspend Netstar–1's performance and that Systems Plus was not to report to work on the project after that day. The agency took the position that no debriefing was required. Systems Plus filed its protest here on October 11, 2005.

## DISCUSSION

Plaintiff's basis for seeking an injunction against DOL is that its refusal to honor the statutory stay was improper. We have jurisdiction pursuant to the Tucker Act. 28 U.S.C. § 1491(b)(1) (2000) ("the United States Court of Federal Claims . . . shall have jurisdiction . . . on an action by an interested party objecting to . . . any alleged violation of statute or regulation in connection with a procurement or a proposed procurement"). Review is pursuant to the standard of review set out in the Administrative Procedure Act.[3] *Id.* § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."). Accordingly, the court can hold unlawful and set aside agency action which is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2000).

*Statutory Stay*

Plaintiff argues that DOL was required to either prohibit Netstar–1 from beginning contract performance or to suspend that performance once it had begun. It relies on 31 U.S.C. § 3553(d)(3)(A):

If the Federal agency awarding the contract receives notice of a protest in accor-

---

2. FAR provisions are found in title 48 of the Code of Federal Regulations.

3. Administrative Procedure Act of 1946, June 11, 1946, ch. 324, 60 Stat. 237 (codified as amended in scattered sections of 5 U.S.C.).

dance with this section during the period described in paragraph (4)—

(i) the contracting officer may not authorize performance of the contract to begin while the protest is pending; or

(ii) if authorization for contract performance to proceed was not withheld in accordance with paragraph (2) before receipt of the notice, the contracting officer shall immediately direct the contractor to cease performance under the contract and to suspend any related activities that may result in additional obligations being incurred by the United States under that contract.

Paragraph (4) describes the relevant time periods within which a protest will trigger a suspension of performance:

The period referred to in paragraphs (2) and (3)(A), with respect to a contract, is the period beginning on the date of the contract award and ending on the later of—

(A) the date that is 10 days after the date of the contract award; or

(B) the date that is *5 days after the debriefing date offered to an unsuccessful offeror for any debriefing that is requested and, when requested, is required.*

(Emphasis supplied.) Plaintiff concedes that suspension is not required under sub-paragraph (4)(A) because the protest was more than ten days after contract award.[4] Plaintiff contends that, because a debriefing was required pursuant to 41 U.S.C. 253b(e) (2000), the GAO's September 20 notice to DOL that a protest was pending triggered a suspension of performance under 31 U.S.C. § 3553(d)(4)(B).

Plaintiff offers two independent grounds for its argument that a debriefing was required. Its first is based directly on the language in § 253b(e)(1):

When a contract is awarded ... on the basis of *competitive proposals,* an unsuccessful offeror, upon written request received by the agency within 3 days after the date on which the unsuccessful offeror

receives the notification of the contract award, shall be debriefed and furnished the basis for the selection decision and contract award.

(Emphasis supplied.)

Insofar as is relevant here, therefore, a stay was required if the solicitation called for "competitive proposals." That term is not defined by statute. Plaintiff, however, points to the use of the term in 41 U.S.C. § 253(a):

(a) Procurement through full and open competitive procedures.

(1) Except as provided in subsections (b), (c), and (g) and except in the case of procurement procedures otherwise expressly authorized by statute, an executive agency in conducting a procurement for property or services—

(A) shall obtain full and open competition through the use of competitive procedures in accordance with the requirements of this title [41 USCS §§ 251 et seq.] and the Federal Acquisition Regulation; and

(B) shall use the competitive procedure or combination of competitive procedures that is best suited under the circumstances of the procurement.

(2) In determining the competitive procedures appropriate under the circumstance, an executive agency—

(A) shall solicit sealed bids if—

. . .

(ii) the award will be made on the basis of price and other price-related factors;

. . . and

(B) shall request competitive proposals if sealed bids are not appropriate under clause (A).

To the extent plaintiff's argument is that the final sub-paragraph, by process of elimination, forces the characterization of the procurement here as a competitive proposal (because sealed bids were not utilized), we disagree. Full and open competition through the use of competitive procedures

---

**4.** Defendant and intervenor concede that a suspension would have been automatic had the protest been filed earlier.

can entail more than just sealed bids or competitive proposals. This is apparent from 41 U.S.C. § 259(b):

(b) The term "competitive procedures" means procedures under which an executive agency enters into a contract pursuant to full and open competition. Such term also includes—

. . . .

(3) the procedures established by the Administrator for the multiple awards schedule program of the General Services Administration if—

(A) participation in the program has been open to all responsible sources; and

(B) orders and contracts under such procedures result in the lowest overall cost alternative to meet the needs of the Government;

. . . .

The regulations, moreover, explicitly recognize these additional types of competition. In FAR subpart 6.102, for example, the following appears:

Use of competitive procedures.

The competitive procedures available for use in fulfilling the requirement for full and open competition are as follows:

(a) Sealed bids. (See 6.401(a).)

(b) Competitive proposals. (See 6.401(b).) If sealed bids are not appropriated under (a) above, contracting officers shall request competitive proposals or use the other competitive procedures under (c) or (d) below.

(c) Combination of competitive procedures. If sealed bids are not appropriate, contracting officers may use any combination of competitive procedures (e.g., two-step sealed bidding).

(d) Other competitive procedures. . . .

. . . .

(3) Use of multiple award schedules issued under the procedures established by the Administrator of General Services consistent with the requirement of 41 U.S.C. 259(b)(3)(A) for the multiple award schedule program of the General Services Administration is a competitive procedure.

Subpart 6.401(b), "*Competitive Proposals,*" in turn, begins with the reference, "See Part 15 for procedures." As intervenor points out, this statutory and regulatory framework pre-existed the adoption by Congress in 1994 of the debriefing requirement. Presumably it was aware that competitive procedures were categorized into specific subtypes, of which competitive proposals was one, and FSS contracts another.

From this, defendant and intervenor argue that the use of the term "competitive proposals" in § 253b(e)(1) is intentional. I.e., Congress meant to refer only to competitive procedures other than sealed bids or "other competitive procedures," including multiple award schedules issued under the requirements of 41 U.S.C. § 259(b)(3)(A), the multiple award schedule program of the GSA.

Plaintiff does not view these references as creating distinct categories of procurements, however. Instead, it argues that some "other competitive procedures," such as BPAs awarded under subpart 8.4, can also incorporate sufficient characteristics of a negotiated procurement under Part 15 that they constitute, de facto, competitive proposals within the meaning of § 253b(e)(1). Plaintiff points to the agency's use of such enhanced competitive procedures as reliance on technical proposals and past performance information, as well as the evaluation of quotations both on price and factors other than price.

The difficulty with this argument is that the use of such competition-enhancing devices is not unique to sealed bids or negotiated procurements. Plaintiff was unable to point to any explicit prohibition within FAR subpart 8.4 against the use of enhanced competitive procedures. Subpart 8.4 specifically contemplates the use of BPAs, and indicates the possibility of complex requirements, as well as the need to periodically compare technical approaches and the technical qualifications of offerors. *See* FAR 8.405–3. The agency also is permitted to consider factors other than price, using a best value approach. *See* FAR subparts 8.404(d); 8.405–1(c), 8.405–3.

Plaintiff references the fact that, in GAO decisions involving awards under the FSS, the agencies appeared to use enhanced com-

petitive procedures and gave the protestors a debriefing. *See, e.g., Computer Assocs. Int'l, Inc.,* 2003 Comp. Gen. ¶ 157 (2003); *Venturi Tech. Parnters,* 2003 Comp. Gen. ¶ 114 (2003); *KPMG Consulting LLP,* 2002 Comp. Gen ¶ 196 (2002); *Cox & Assocs. CPAs, PC,* 2001 Comp. Gen. ¶ 102 (2001). The coexistence of enhanced competitive procedures and debriefings does not necessarily indicate that one is required when the other is present, however.

Nor is it determinative here that the solicitation contained the standard clause found at FAR 52.212–1(1), which lists the required contents of a debriefing, "if one is required." FAR 52.212–1 contains instructions to offerors that, according to FAR 12.301(b)(1), are to be included in solicitations for commercial items. Paragraph (1) lists the required contents of a debriefing if one is given. Inclusion of this paragraph does not indicate that a debriefing is required, but only what it is to contain if one is given.

Plaintiff does not contest the use of FAR subpart 8.4, or the use of "enhanced" competitive procedures beyond the minimum requirements of subpart 8.4. We therefore find it persuasive that subpart 8.404(a) explicitly exempts supply schedule procurements from Parts 13 (with minor exceptions), 14, and 15. FAR subpart 8.405–2(d), moreover, specifically provides a truncated explanation process for unsuccessful offerors. Thus, while the agency can elect to use procedures from these other parts, they are not presumptively applicable. The most telling automatic exemption is from subpart 15.506, the only place in the regulations in which the post-award debriefing requirement appears.

We are left with an undefined specific statutory expression, "competitive proposals," which is used elsewhere in the code and in the regulations as a term of art. As a term of art, it is distinct from the FSS procurement involved here. Therefore, plaintiff has not persuaded us that extending the debriefing requirement is compelled by the statute. Plaintiff's arguments amount to this: Congress *should* have made it clear that it wished the debriefing requirement to extend to all procurements other than those based solely on price.

Plaintiff's second argument is based on the solicitation's incorporation of FAR Part 12. Plaintiff points specifically to subpart 12.102(b), which states: "Contracting officers shall use the policies in this part in conjunction with the policies and procedures for [Part 13, 14, 15] as appropriate for the particular acquisition." Plaintiff's analysis goes through a complicated series of steps, which it believes leads inexorably to the conclusion that: Part 13 (Simplified Acquisition Procedures) cannot apply because the contract price exceeded the simplified acquisition threshold contained therein; that Part 14 (Sealed Bidding) cannot apply because this was not a sealed bid procurement; and hence, by default, Part 15 must apply. Having arrived at Part 15 through this daisy chain of implied incorporations, plaintiff then points to the post-award debriefing requirement set out in subpart 15.506(a)(1): "An offeror, upon its written request . . . shall be debriefed and furnished the basis for the selection decision and contract award."

We disagree with this analysis. There is no question that the agency had the right to use subpart 8.4 for this procurement and had the right to use a BPA. It is also undisputed that it could make use of the more streamlined FAR Part 12 commercial item procedures. We assign less significance than plaintiff to the generalized statement in subpart 12.102(b) that, "Contracting officers shall use the policies in this part in conjunction with the policies and procedures for [Part 13, 14, 15] as appropriate for the particular acquisition." The incorporation of such procedures is therefore subject to some discretion and it is piecemeal. We view as of greater weight the specific statement in subpart 8.404(a) that "Parts 13 (except 13.303–2(c)(3)), 14, 15, and 19 . . . do not apply to BPAs or orders placed against Federal Supply Schedules contracts. . . ." FAR Part 15, therefore, is explicitly made inapplicable to FSS contracts. We thus decline to give the generalized reference in subpart 12.102 controlling effect.

Intervenor also challenges plaintiff's assumption that Part 15 must, of necessity, apply, due to the inapplicability of Parts 13 and 14. It contends that portions of Part 13

could be applicable to the procurement. It points to the specific exception of subpart 13.303–2(c)(3) (BPAs under FSS contracts) in subpart 8.404(a) from the general inapplicability of Parts 13, 14, and 15 to FSS procurements. While plaintiff contends that the exception does not apply due to the size of the this procurement (over $30 million), subpart 13.303–5(b)(1) states that neither the simplified acquisition threshold for the entire contract ($5 million), nor the limitation for individual purchases against BPAs (also $5 million) apply to FSS contracts. In short, there is no prohibition to the application of Part 13, even assuming such application were necessary.

Finally, plaintiff relies on *OSI Collection Services., Inc.*, 2001 Comp. Gen. ¶ 103 (2001) and *ACS Gov't Solutions Group, Inc.*, 99–1 Comp. Gen. ¶ 106 (1999) for the proposition that by requiring quotes to contain a technical proposal and by basing award on factors other than price, that DOL availed itself of Part 15 procedures and should also be held to the other requirements contained in that part. Such reliance is misplaced. Those cases involved solicitations for task orders against existing FSS contracts that elected to use some of the procedures found in FAR Part 15. The GAO only applied those standards for competitive procurements found in FAR Part 15 that were implicated by the particular procedure that the solicitations stated would be used. Moreover, as we held in *Ellsworth v. United States,* the whole of Part 15 is not applied to a solicitation merely because it employs some Part 15 procedures. 45 Fed.Cl. 388 (1999) ("Plaintiff's proposition

that Part 15 standards must be imported into an FSS procurement when an agency chooses to solicit and base its evaluation on detailed information from the contractors amounts to an unwarranted embellishment of the decisional law."). Rather, only those portions that are particularly implicated by the procedures used will be applied to the solicitation. In this instance, the solicitation did not specifically provide for a post-award debriefing and thus the post-award debriefing requirements found in subpart 15.506 are not applicable.

Despite some of the elements of enhanced competition present here, a procurement under subpart 8.4 is different in kind from one conducted under Part 15, even if some procedures also present in Part 15 are utilized. It is therefore not counterintuitive that in this truncated procurement process among existing schedule holders, Congress would view the "brief explanation" process of FAR 8.405–2(d) as adequate.[5]

### CONCLUSION

For the reasons set out above, plaintiff's request for injunctive relief and for a declaratory judgment is denied. The clerk is directed to dismiss the complaint. No costs.

---

**5.** Defendant argues that plaintiff has not shown that, assuming there was a statutory violation, that it was prejudiced. It points out that plaintiff failed to take advantage of the alternative means of obtaining a stay (filing a GAO protest within ten days of contract award). We reject this argument. The possibility that other means of ob-

taining a stay were available is irrelevant to the question at bar. If plaintiff was entitled to a stay, the prejudice is apparent. The entire purpose of the stay is to keep the parties in place pending GAO review. The availability of corrective action here or at the GAO could turn on the degree of disruption.